UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　- v -<br><br>KARL MOTEY,<br><br>　　　　　　　　　　Defendant. | 10 CR 1249 (JSR) |


# KARL MOTEY'S SENTENCING MEMORANDUM

| | |
|---|---|
| Leland B. Altschuler<br>2995 Woodside Rd, Suite 350<br>Woodside, CA 94062<br>Telephone:  (650) 328-7917<br>Facsimile:  (650) 989-4200<br>Email:  Lee@AltschulerLaw.com | Alexandra A.E. Shapiro<br>Shapiro, Arato & Isserles LLP<br>The Grace Building<br>1114 Avenue of the Americas<br>45th Floor<br>New York, NY  10036<br>Telephone:  (212) 479-6726<br>Facsimile:  (212) 202-6417<br>Email:  ashapiro@shapiroarato.com<br><br>*Attorneys for Karl Motey* |

## *TABLE OF CONTENTS*

Page

TABLE OF AUTHORITIES ................................................................................... 3

I.  INTRODUCTION .............................................................................................. 4

II. SUMMARY OF SENTENCING REQUEST .................................................... 2

III. A PROBATIONARY DISPOSITION IS WELL WARRANTED ................ 3

    A. Sentencing Considerations Under The Guidelines. ...................................... 3

    B. Sentencing Factors Under § 3553. ................................................................. 3

        Mr. Motey's History And Characteristics Establish That He Is An Excellent Candidate For Probation. ........................................................................ 4

        The Nature And Circumstances Of This Offense Demonstrate A Good Man Whose Offenses Merit A Probationary Sentence. ............................... 7

        A Probationary Sentence Serves Society's Interests In Punishment and Promoting Respect For The Law. ............................................................ 8

        A Probationary Sentence Affords Adequate Deterrence And Protects The Public. ... 9

        A Probationary Sentence Will Result In Consistent Treatment For Mr. Motey And Other Similarly Situated Cooperators, Particularly Those Who Had No Direct Gain From Unlawful Activity. ...................................................... 10

IV. CONCLUSION ................................................................................................ 11

i

# TABLE OF AUTHORITIES

Page(s)

*Cases*

*United States v. Booker,* 543 U.S. 220 (2005).........................................................................6

*United States v. Crosby*, 397 F. 3d 103, 114 (2d Cir. 2005)....................................................6

*Kimbrough v. United States,* 52 U.S. 85, 89 (2007)................................................................6

*United States v. Fernandez*, 443 F.3d. 19 (2d Cir. 2006).......................................................12

*Statutes*

18 U.S.C. § 3553(a)..................................................................................................6, 7, 12, 13

*United States Sentencing Guidelines*

U.S.S.G. § 5K1.1......................................................................................................................6

I. INTRODUCTION

Among the approximately 13 individuals who have earned a U.S.S.G. § 5K1.1 letter from the United States and have been sentenced to a term of probation as a result of substantial assistance in the most significant set of insider trading prosecutions in memory, Karl Motey's positive contributions are extraordinary in scale and scope:

- *Nature*:  Karl Motey's substantial cooperation included making more than 400 undercover recorded telephone calls with over 50 subjects of the government's investigations; arranging and participating in consensually recorded meetings in California and New York; devoting weeks to preparing for two trials; and testifying before this Court for a total of eight days in those two trials (Government 5K1.1 Letter, dated January 28, 2013, ("5K1.1 Ltr."), pp. 3, 8).  Furthermore, as a result of his cooperation, Mr. Motey had to endure threats from another analyst who was subsequently prosecuted.[1]

- *Value*: As the government explains, Mr. Motey's assistance was: 1) "extraordinary" cooperation; 2) "pivotal" in the investigation of expert networking firms; and 3) "critical" (5K1.1 Ltr., pp. 3, 8), leading directly to:
    A. More than 20 convictions for insider trading (*id*., pp. 3, 8);
    B. In the matchmaking cases, at least a dozen convictions, including the convictions of two PGR employees and five insiders at leading American public companies, including AMD, AT&T, and Dell (*id*., pp. 3, 5-6);
    C. Evidence that formed the "cornerstone" of the government's applications for Court orders to intercept PGR's conference lines (interceptions that were so productive that six 30–day extensions were sought and granted, leading to incriminating recordings that are a "critical part" of successful and pending insider trading investigations) (*id*., pp. 3, 6);
    D. Over one hundred consensually recorded calls with dozens of company insiders paid by expert networking firms to speak with investors of various sorts, including hedge funds (*id*., p. 5);
    E. No fewer than twelve "downstream" convictions, with at least five "downstream" direct cooperators (*id*., pp. 5-7); and
    F. A premier investigative/prosecution initiative that has reshaped a $450-$500 million-year matchmaking industry[2] and that continues to this day (*id*., p. 8).

---

[1] *U.S. v. Kinnucan*, 12-cr-00163-DAB.
[2] Condon, Christopher. "U.S. Trading Probe Puts Research, Networks in Spotlight". *Bloomberg*. November 24, 2010. http://www.bloomberg.com/news/2010-11-24/u-s-insider-trading-probe-puts-research-expert-networks-into-spotlight.html, last accessed January 23, 2013.

- *The indirect value* of his cooperation includes, again according to the government's estimates multiple other ongoing investigations (*id.*, pp. 3,8).

- *Timeliness*: Immediately on being approached by the F.B.I., Karl Motey indicated that he would assist the United States. Within two weeks of the F.B.I. approaching him in California, Karl Motey began debriefing in this District, and made the first of more than 400 recorded telephone calls. (*Id.*, pp. 3). In or about December, 2010, nearly two years after he began cooperating, he entered into a cooperation agreement.

- *Extent*: Karl Motey spent so much time on his cooperation that, as revealed in the PSR, his cooperation became his full–time job, making it necessary for his wife to return to work. (PSR, ¶ 42).

II. SUMMARY OF SENTENCING REQUEST

We respectfully submit that, in light of the "extraordinary" cooperation detailed in the government's 5K1.1 Letter and the Probation Office's recommendation of a one-year term of probation (PSR at p. 18), the Court should sentence Mr. Motey to a one-year term of probation, with supervision in Mr. Motey's home district, the Northern District of California.

Mr. Motey's work ethic and character (coupled with his extensive cooperation) makes him an ideal candidate for probation. Both before and after this matter arose, Mr. Motey's home, work and community life has been exemplary, as reflected in more than 20 letters of support already tendered to the Court. Further, Mr. Motey has already demonstrated he will succeed on probation, given the close federal supervision by law enforcement he has managed for nearly four years.

We ask the Court to impose no fine. Mr. Motey has already paid a stiff financial penalty as a consequence of lost work opportunities, family expenses, and other fees and costs associated with this matter. Given the government's 5K1.1 Letter, a departure from the advisory Guidelines' fine range is appropriate. Under 18 U.S.C. § 3553(a), a fine is unnecessary to

achieve statutory sentencing purposes, and it would be "greater than necessary" given Mr. Motey's cooperation.

### III. A PROBATIONARY DISPOSITION IS WELL WARRANTED

*A. Sentencing Considerations Under The Guidelines.*

As the Court is well aware, the U.S. Sentencing Guidelines are advisory, not mandatory. *United States v. Booker,* 543 U.S. 220 (2005). The Court's discretion in ascertaining an appropriate sentence for each defendant's situation is to be in "consideration the judge's own sense of what is fair and a just sentence under all circumstances." *United States v. Crosby*, 397 F. 3d 103, 114 (2d Cir. 2005).

However, under the law of this Circuit, the Court must first determine an appropriate Guideline range, then consider any information from the United States supporting a departure from that range pursuant to U.S.S.G. § 5K1.1. After that exercise, the Court is to proceed under 18 U.S.C. § 3553(a) and determine a sentence "sufficient, but not greater than necessary, to accomplish the goals of sentencing." *Kimbrough v. United States,* 52 U.S. 85, 89 (2007).

We respectfully submit that the detailed 5K1.1 Letter makes Guideline calculations and discussion of less than central importance. Nonetheless, in the interest of resolving thorny issues of "gain" for Guideline calculation where a number is difficult to quantify, we have stipulated with the government, that for purposes of the Sentencing Guidelines, Mr. Motey's gain is somewhere between approximately $120,000 and $150,000. (PSR p. 16).

B. Sentencing Factors Under § 3553.

The touchstone of an appropriate sentence under § 3553(a) is a sentence sufficient, but not greater than necessary, to comply with the specific statutory factors described below.

1. Mr. Motey's History And Characteristics Establish That He Is An Excellent Candidate For Probation.

The many reasons that made Karl Motey an excellent candidate for the government to consider as a cooperator also make him an excellent candidate for probation.

First, he is a diligent, devoted, hard-working and employed member of the community, without the usual historical bag and baggage of most cooperators. His lifelong work history reveals rock-solid stability and a keen drive to support and assist others. Significantly, both inside and outside the workplace, his many letters of support[3] show that he has given generously of his time to support others and do the right thing:

- I have known Karl Motey for 35 years, since age 12. . . .  I have indeed witnessed Karl's lifetime of honest hard work first hand from his early years working at Legal Sea Foods during High School, then during college being entrepreneurial, using his sales skills, earning a living providing parts, supplies and support to the Massachusetts Turnpike Authority. S.A., pp. 1, 2.

- . . . when I relocated to the Silicon Valley in 1991, Karl invited me to stay with him for a month while I got situated - I worked for Ernst and Young in San Jose, CA. Karl's knowledge of the High Tech industry and the region was instrumental in helping me establish my career in High Tech. He is one of only a handful of friends or professional peers I can make this statement about without hesitation. M.S., pp. 1-2.

- Recently my son [name omitted] was hit by a car as a pedestrian and had a brain injury, multiple skull and facial fractures, among other things. Karl was amazing in his support and help. He drove over to get my young son [name omitted], offered to help with him, called and texted multiple times a time plus helped with keeping other family members updated. My sister was out of town and he really stepped up for us. D.H., p. 2.

- . . . Karl sought me out to make sure I was aware of his unique circumstances. He did not need to do so because, as discussed above, the company had fully considered his situation when deciding to engage him as a consultant. Nevertheless, Karl alerted me and gave me the chance – as the newly hired general counsel of [company name omitted] – to terminate his association with the company. . . . Some might say that Karl took a risk in

---

[3] At Mr. Motey's request, we abbreviate with initials the names of those who have provided letters of support.

4

approaching me as he did, but I would say he took responsibility, not only for his past actions, but for [the company's] reputation and future. S. G, Esq., p. 1.

- . . . When he decided to cooperate with government authorities in 2010 and entered his guilty plea, he immediately and voluntarily informed the leadership team at [company name omitted], including me . . . . He was forthright in his explanation of his situation, never minimizing or justifying his actions. . . . In my view, he has taken full responsibility for his actions in the past. Karl made it clear that he did not want to put . . . management or employees in an awkward position. Even though we could have easily decided to end our engagement with Karl, we as a team decided to keep him working with us as a consultant. More importantly, I decided to expand his role . . . to fully utilize his talents. . . . My hope is that, once this situation is behind him, we will be able to further expand his role in the company. J.K., p. 1.:

Second, he is devoted to his wife, children, family, and their community. Mr. Motey is again working. With the loving help of his wife of 17 years, he is supporting their three children. The Motey family is beginning to breathe easier after wrenching times involving one of their three children, PSR ¶ 42. His support is central to his family, and his family is central to him. He has repeatedly demonstrated to others (both before and after this matter arose) that while he erred, he is a productive member of society, not a person who engaged in a headlong pursuit of the lifestyles of the rich and infamous:

- He made time to volunteer coaching his three children's soccer teams. He gained the respect and trust of the other soccer parents for his fairness, competency, and commitment to improving the athletic skills of each child while also assuring their participation. . . . Karl often reminds me an an 'Eagle Scout' or one of the many junior naval officers I have had the pleasure to work with. Professor P.M, M.D., pp. 1-2.

- I have known Karl for 8 years . . . Karl is a very important member of our MVLA (Mountain View Los Altos) board of directors, and performs his duties honestly and admirably. Karl advocates for responsible behavior with coaches, players and parents. He recently drove through our board the mandatory attendance for a Positive Coaching Alliance session - teaching abusive coaches, loud parents, and lax players good sportsmanship. Additionally, he has been outspoken about removing coaches that do not respect the children or violate rules. R.R., p. 1.

- . . . he always makes time to be involved in his kids' lives. He supports them by going to their games, recitals and events. For many years he has been the manager of the local

>  boys soccer club, which takes patience, organization and many hours to manage C. D., p. 1.

- By the time I started law school in 1989, already in debt from my undergraduate years and facing a mountain of even more loans in law school, Karl, who had only been working for a few years himself, and wanting to lessen the financial burden on our mother, helped me financially by putting a down payment on an apartment and helping me pay rent. K.M., p. 2.

- (The Court's attention is respectfully invited to the poignant letter by Mr. Motey's wife; this letter in particular describes a number of private matters that give the full measure of Karl Motey as devoted husband, father, and family member, and the many high prices he and his family have paid in the course of his cooperation.)

Third, Mr. Motey vividly appreciates the difference between right and wrong, having developed an almost four-year track record of self-rehabilitation that makes it highly unlikely he will ever re-offend. It is because of his lifelong history as a law-abiding citizen that he particularly appreciates the seriousness of his conduct. Once the government sought his cooperation, Karl Motey was unstoppable in trying to set things right, in ways more sustained and more significant than most cooperators:

- He immediately became a "man on a mission," willingly, immediately, and without complaint taking on every request by F.B.I. Special Agents, determined to do all he could to tear out, root and branch, the scourge of insider trading;

- He consistently produced results, suggesting investigative strategies and approaches to the Special Agents, essentially turning his own established business into an undercover hedge fund for the United States, and setting the stage for the first successful federal crackdown on expert networking firms;

- He consistently demonstrated initiative in ways large and small during the investigations, such as when he was shown a proprietary document by a disloyal company employee, and on the spot requested and received the employee's permission to photograph the document with a camera phone; and

6

- As detailed by the thoughtful and detailed letter from the United States Attorney, Karl Motey produced a staggeringly long stream of results that dwarf his own activities at issue in this case.[4]

- Last, throughout his cooperation – from his early proffers through all of his testimony, as the government explains, Mr. Motey has always been truthful and honest.[5]

### 2. The Nature And Circumstances Of This Offense Demonstrate A Good Man Whose Offenses Merit A Probationary Sentence.

At the time Karl Motey began Coda Group in 2006, he was a well–established securities analyst. In 2005, the *Wall Street Journal* named him a top analyst in the semiconductor industry. He had substantial financial and technical skills, based on more than 9 years working for three companies in the semiconductor industry (1987-1996), and 10 years at three investment firms – Alex Brown (1996-1999), CE Unterberg Towbin (1999-2001), and First Union Securities/Wachovia Bank (2001-2006).

From his previous experience, Mr. Motey knew that developing significant insights about *one* specific company came to him from hard work following *many* companies.

Mr. Motey read, attended or otherwise kept up with a flood of facts and sources to develop his insights and modeling: S.E.C. and other public reports; industry conferences; programs and interviews sponsored by Investor Relations departments; reports by other analysts; company announcements; management calls on "800" numbers; media reports about design wins, and so on. Predictably, his work was detailed, precise, and time-consuming.

---

[4] Mr. Motey's commitment and follow-through was on display in open court: he prepared for, traveled across country and testified in *United States v. Whitman,* notwithstanding back pain so significant that he was unable to sit for any extended period.

[5] (5K1.1 Ltr., p. 3) ("Throughout his meetings with the Government and his ongoing work with the FBI, Motey has been forthright and honest, and he has repeatedly accepted responsibility for his past criminal conduct. His statements have been corroborated by toll records, trading records, witnesses, and other documentary evidence.").

7

Mr. Motey documented his efforts in spiral notebooks. Because the notebook entries were so reliable, the government repeatedly referred to them and used them as evidence in two criminal trials, Un*ited States v. Fleishman*, 11 CR 32 (JSR) and *United States v. Whitman*, 12 CR 125 (JSR).

Mr. Motey had five long-term clients, each with a flat fee arrangement. Mr. Motey did not make buy/sell recommendations.

As this Court may recall from Mr. Motey's testimony in the *Fleishman* and *Whitman* trials, in about late 2007, Mr. Motey slipped. He "crossed the line." In addition to the analysis and modeling which was his stock in trade, he began to ask for material non-public information ("MNPI") in telephone calls and conversations with insiders, primarily at Marvell Technology Group Ltd. Significantly, he did not use guile or other gifts or gratuities to obtain MNPI, nor did he seek or receive a bonus. He did not trade on MNPI. Mr. Motey did share certain MNPI with various Coda Group clients, although he also held back some information (5K1.1 Ltr. p.2) and "dumbed down" other information as simply too sensitive.

      3. A Probationary Sentence Serves Society's Interests In Punishment and Promoting <u>Respect For The Law.</u>

Under the first of the three statutory factors to consider in selecting a sentence sufficient, but not greater than necessary, to meet the statutory sentencing goals (and within the context of Mr. Motey's offense and cooperation), a short probationary sentence will reflect the seriousness of his offense, promote respect for the law, and provide just punishment. 18 U.S.C. § 3553(a)(2)(A).[6]

---

[6] The fourth factor (training, medical care or treatment) is simply not a relevant consideration for Mr. Motey. 18 U.S.C. § 3553(a)(2)(D).

As detailed in the government's thoughtful § 5K1.1 letter, Mr. Motey's successful efforts to assist the government's efforts to prosecute the serious crime of insider trading (both in the matchmaking context and the individual trading context) deserve recognition. The history of a defendant's cooperation and characteristics, as shown by cooperation, including remorse and rehabilitation, are fairly considered in the sentencing calculus. *United States v. Fernandez*, 443 F.3d. 19 (2d Cir. 2006). Additionally, given the nature, value, timeliness and extent of his cooperation since April 2009, it is plain that the second factor under § 3553(a)(2)(A) is satisfied – Mr. Motey already has a renewed respect for the law, a respect that is not new-found, but consistent with his lifelong law-abiding nature. Moreover, a probationary sentence is a just sentence, given: Mr. Motey's extraordinary proactive cooperation; that he has already suffered mightily in ways that every defendant does and that no defendant should; physical pain while preparing for, traveling to, and testifying in the *Whitman* matter; the family crisis (PSR. ¶ 42); and the extraordinarily offensive and threatening telephone calls relating to his cooperation. Further, he has lost his good name, his business, and he will never work as a securities analyst again.

    4. <u>A Probationary Sentence Affords Adequate Deterrence And Protects The Public.</u>

This section addresses both the second and third statutory factors for selecting a sentence sufficient, but not greater than necessary to satisfy the law. The statutory factors are affording adequate deterrence, and protecting the public from future crimes by the defendant. 18 U.S.C. §§ 3553(a)(2)(C) and (D).

The record here could not be clearer that specific deterrence is not an issue. To the extent that past conduct is a predictor of future conduct, for almost all of his adult years Mr. Motey has been an exemplary, law-abiding citizen. His involvement in the offense was aberrational and

9

unmarked by a desire to realize unlawful profits. Since then, and as detailed by the 5K1.1 Letter, Mr. Motey has demonstrated that he will do the right thing and remain true to his core values. Any term of probation will sharply remind him of this.

As for general deterrence, while sometimes it may be important to "send a message," the more nuanced opportunity this case presents is critical: to the defense bar and others, the message that district court judges will recognize substantial assistance in pronouncing a fair sentence, and to those who would illegally traffic in inside information, the message that it will be difficult to evade detection, especially given the incentives for others involved in the conduct to cooperate. Given Mr. Motey's remarkable and many accomplishments, we respectfully suggest this is the case where recognizing extraordinary assistance affords the best means of sending a general deterrence message.

With respect to protecting the public, we respectfully suggest that the same factor as those just described apply with equal force.

> 5. A Probationary Sentence Will Result In Consistent Treatment For Mr. Motey And Other Similarly Situated Cooperators, Particularly Those Who Had No Direct Gain From Unlawful Activity.

Using best efforts, we identified 23 individuals who were granted probation in other insider trading cases in this District from in or about August 2009 to January 9, 2013. Of those, approximately 13 earned a § 5K1.1 letter.[7]

---

[7] Those who were granted a § 5K1.1 letter include (1) *U.S. v. Benhamou,* 1:11-cr-00336-GBD; (2) *U.S. v. Cardillo,* 1:11-cr-00078-JSR-1; (3) *U.S. v. Devlin,* 1:08-cr-01307-WHP; (4) *U.S. v. Goel,* 1:10-cr-00090-BSJ; (5) *U.S. v. Kumar,* 1:10-cr-00013-DC; (6) *U.S. v. Plate,* 1:10-cr-00056-RJS-7; (7) *U.S. v. Scolaro,* 1:11-cr-00429-WHP; (8) *U.S. v. Shankar,* 1:09-cr-00996-RJS; (9) *U.S. v. Slaine,* 1:09-cr-01222-RJS-1; (10) *U.S. v. Smith,* 1:11-cr-00079-JSR-1; (11) *U.S. v. Stephaou,* 1:09-cr-00467-CM-1; (12) *U.S. v. Tudor,* 1:09-cr-01057-RJS; (13) *U.S. v. Wang,* 1:12-cr-00541-JSR.

Although there may have been other individuals whose cooperation in these insider trading cases was extensive, a fair reading of the government's 5K1.1 letter is that Mr. Motey's cooperation stands alone and was perhaps the most significant:

> Motey contribution to Government prosecutions and investigations has been extraordinary. As a proactive cooperator, Motey played a pivotal role in the Government's investigation of expert networking firms, in particular Primary Global Research ("PGR"), by engaging in literally hundreds of consensually recorded conversations with consultants and employees of PGR. Those calls substantially contributed to multiple convictions of PGR consultants and two PGR employees . . . . Even more importantly, Motey's consensual calls were the cornerstone of the Government's application to secure Court-authorized wiretaps of PGR's conference lines, which in turn provided the Government with incriminating recordings of PGR's clients and other PGR consultants and employees, leading to additional convictions. The wiretap recordings of PGR clients - analysts and portfolio managers at hedge funds and investment firms around the country - have since led to numerous other significant insider trading prosecutions and ongoing investigations.
> 
> * * *
> 
> Because of the breadth of Motey's cooperation with this Office - notwithstanding that his cooperation has already spanned more than three and half years and has resulted directly and indirectly in over 20 criminal convictions - Motey's cooperation remains ongoing.

(5K1.1 Ltr., p. 3).

IV. CONCLUSION

For the reasons set forth above and in the government's 5K1.1 letter, we respectfully request that the Court sentence Mr. Motey to a one-year term of probation and no fine.

Dated: January 28, 2013	Respectfully submitted,
         New York, New York

By:   /s/ Leland B. Altschuler

Leland B. Altschuler
2995 Woodside Rd, Suite 350
Woodside, CA 94062
Telephone:  (650) 328-7917
Facsimile:  (650) 989-4200
Email:  Lee@AltschulerLaw.com


By:   /s/ Alexandra A.E. Shapiro

Alexandra A.E. Shapiro
Shapiro, Arato & Isserles LLP
The Grace Building
1114 Avenue of the Americas
45th Floor
New York, NY  10036
Telephone:  (212) 479-6726
Facsimile:  (212) 202-6417
Email:  ashapiro@shapiroarato.com

*Attorneys for Karl Motey*