UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| -v.- | : | 10 Cr. 1249 (JSR) |
| KARL MOTEY, | : | **REDACTED** |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# GOVERNMENT'S SUBMISSION
## PURSUANT TO SECTION 5K1.1 OF THE GUIDELINES

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
of America.

JILLIAN BERMAN
CHRISTOPHER LAVIGNE
ANTONIA APPS
Assistant United States Attorneys
- Of Counsel –



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 28, 2013

BY HAND REQUEST TO BE FILED UNDER SEAL

The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York  10007

> Re:   *United States* v. *Karl Motey*,
>       **10 Cr. 1249 (JSR)**

Dear Judge Rakoff:

The Government respectfully submits this letter to advise the Court of the pertinent facts concerning the assistance that defendant Karl Motey has rendered in the investigation and prosecution of other persons.  In light of these facts, the Government moves, pursuant to Section 5K1.1 of the Sentencing Guidelines, that the Court sentence the defendant in light of the factors set forth in Section 5K1.1(a)(1)-(5) of the Guidelines.

## I.   Background

### A.   Motey's Personal Background

Motey is a 48 year-old college graduate who, from the 1990s until April 2009, worked as a research analyst covering technology companies.  Motey first worked as an analyst at several sell-side investment firms, including Alex Brown, CE Unterberg Towbin, and eventually First Union Securities/Wachovia. In late 2006, Motey formed his own research consulting company, the Coda Group.  By early 2007, the Coda Group had five clients, including Doug Whitman of Whitman Capital Management.  These clients were all portfolio managers at hedge funds with whom Motey had developed a relationship when he worked as a sell-side analyst.  Motey's clients paid him a set fee on a quarterly basis, ranging from approximately $12,500 to $25,000 a quarter, for a total of approximately $500,000 a year.

The Honorable Jed S. Rakoff
January 28, 2013
Page 2

B.  Motey's Criminal Conduct

Beginning in or about late 2007, Motey began obtaining material nonpublic information ("Inside Information") from company insiders at two companies: Marvell Technology Group ("Marvell") and UMC Semiconductor ("UMC"). Motey shared this Inside Information with the clients of the Coda Group, knowing that they would use the information for the purposes of trading in the securities of those companies.

Motey's contacts at Marvell included two employees: (1) Sam Miri, who reported to the Vice President of Sales for Marvell's Communications business; and (2) Bill Brennan, who was the Vice President of Sales of Marvell's Storage business, which accounted for 50% of Marvell's business. The Inside Information Motey received from Brennan and Miri about Marvell included information about Marvell's revenue, guidance for future revenue, manufacturing build plan numbers, design wins, and significant management changes. For the most part, Brennan's and Miri's information proved to be correct. Motey's inside source at UMC was ███████████ ███████████████████████████████████████████████████, which Motey passed to some (but not all) of his hedge fund clients.

Motey also received Inside Information from two individuals who worked for a hedge fund called ████████████████████████████████ provided Motey with information about several companies, which Motey understood originated from insiders at those companies. Motey passed some, but not all, of this information along to the clients of Coda Group. Motey did not himself use material nonpublic information he received to trade securities.

C.  Guilty Plea

On December 14, 2010, Motey pleaded guilty to Counts One and Two of the above-captioned Information before Your Honor. Count One of the Information charged Motey with conspiring with other individuals to commit securities fraud, in violation of Title 18, United States Code, Section 371, in connection with an insider trading scheme involving Marvell securities from in or about 2007 through in or about March 2009. This charge carries a maximum sentence of five years' imprisonment, a maximum term of three years' supervised release, a maximum fine, pursuant to Title 18, United States Code § 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense, and a mandatory $100 special assessment. Count Two of the Information charged Motey with securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2, in connection with an insider trading scheme relating to Marvell securities. This charge carries a maximum sentence of 20 years' imprisonment, a maximum term of three years' supervised release, a maximum fine of $5 million, and a mandatory $100 special assessment.

The Honorable Jed S. Rakoff
January 28, 2013
Page 3

## II.     Motey's Cooperation

Motey was approached by the FBI on the street on April 1, 2009.  During that first meeting, Motey admitted to his criminal conduct and stated that he wanted to cooperate with the Government.  Within less than two weeks of that approach, Motey began to proffer with the Government and to engage in proactive cooperation at the direction of the FBI.  Throughout his meetings with the Government and his ongoing work with the FBI, Motey has been forthright and honest, and he has repeatedly accepted responsibility for his past criminal conduct.  His statements have been corroborated by toll records, trading records, witnesses, and other documentary evidence.

Motey's contribution to Government prosecutions and investigations has been extraordinary.  As a proactive cooperator, Motey played a pivotal role in the Government's investigation of expert networking firms, in particular Primary Global Research ("PGR"), by engaging in literally hundreds of consensually recorded conversations with consultants and employees of PGR.  Those calls substantially contributed to multiple convictions of PGR consultants and two PGR employees, namely James Fleishman (convicted after a trial at which Motey testified) and Bob Nguyen (convicted following a guilty plea).  Even more importantly, Motey's consensual calls were the cornerstone of the Government's application to secure Court-authorized wiretaps of PGR's conference lines, which in turn provided the Government with incriminating recordings of PGR's clients and other PGR consultants and employees, leading to additional convictions.  The wiretap recordings of PGR clients – analysts and portfolio managers at hedge funds and investment firms around the country – have since led to numerous other significant insider trading prosecutions and ongoing investigations.

In addition to Motey's proactive cooperation, Motey has provided historical incriminating information about his former co-conspirators, including company insiders, research consultants and clients, resulting in, among other things, the conviction of Doug Whitman, as well as providing the Government with assistance in a number of other ongoing investigations.  Motey's proactive cooperation and his cooperation against former coconspirators are discussed separately below.

Because of the breadth of Motey's cooperation with this Office – notwithstanding that his cooperation has already spanned more than three and half years and has resulted directly and indirectly in over 20 criminal convictions – Motey's cooperation remains ongoing.

### A.  Motey's Proactive Cooperation

Over the course of a year, Motey recorded over 400 telephonic and in-person conversations (or attempted conversations) at the direction of the FBI with over 50 subjects of the Government's insider trading investigations.  Specifically, Motey recorded conversations (1) with company insiders who were acting as consultants for expert-networking firms, and employees of those expert-networking firms, including PGR; and (2) with individuals whom Motey knew prior to being approached by the FBI, █████████████████████

The Honorable Jed S. Rakoff
January 28, 2013
Page 4

███████████████████████████████████████████████████

### 1. Motey's Contribution to the Government's Investigation of PGR

Beginning in May 2009, Motey agreed to pose as a hedge fund manager who was interested in becoming a client of PGR. PGR advertised itself as an independent investment research firm that provided money managers with market information by providing these individuals with access to a network of industry "experts" or "consultants." PGR purported to instruct its experts not to disclose their companies' confidential information to PGR's clients and employees. However, the FBI had reason to believe that PGR was instead promoting the dissemination of Inside Information from certain experts to the clients that wanted it.

Acting at the direction of the FBI, Motey contacted PGR to use its services and was connected with PGR sales representative James Fleishman. In a series of consensually recorded conversations, Motey conveyed to Fleishman that he wanted Inside Information from company insiders, and Fleishman made clear that he would assist Motey in that endeavor. Touting PGR's ability to secure valuable Inside Information in circumstances that would evade detection, Fleishman facilitated Motey's communications with a series of company insiders who did, in fact, provide Motey with Inside Information. Additionally, Fleishman introduced Motey to Bob Nguyen, a PGR employee who assisted in providing Motey with Inside Information at Fleishman's direction.

#### a.  James Fleishman

Motey's consensually recorded calls with James Fleishman and PGR's consultants, together with Motey's testimony explaining the significance of those calls, substantially contributed to Fleishman's conviction at the conclusion of a more than two week trial in August and September 2011.[1] Indeed, Motey spent *five days* on the witness stand at Fleishman's trial. On December 21, 2011, Fleishman was sentenced to 30 months' imprisonment, to be followed by three years' supervised release. Fleishman's conviction – and this Court's decision denying the defendants' motion to suppress the PGR wiretaps – was recently affirmed by the Second Circuit.

---

[1] Also important to Fleishman's conviction was testimony by PGR consultants Dan DeVore, Tony Longoria and Suk-Joo Hwang, each of whom were recorded in consensual calls with Motey, and on wire intercepts, and whose testimony was secured in no small measure by the fact that they were participants to those incriminating calls. The testimony of Bob Nguyen, who made incriminating statements to Motey in consensually recorded conversation and was also captured on the PGR wiretap making incriminating statements, also materially contributed to Fleishman's conviction.

The Honorable Jed S. Rakoff
January 28, 2013
Page 5

      *b.   PGR Consultants*

    As noted above, Motey engaged in over a hundred consensual calls with dozens of company insiders who were paid by expert networking firms, principally PGR, to talk to investment firm professionals. Motey was remarkably successful in obtaining incriminating statements from these company insiders, and his calls, along with the subsequent wiretap recordings (between the consultants and other PGR clients), directly resulted in the following convictions:

- **Mark Anthony Longoria** – the most highly used PGR consultant and a former Advanced Micro Devices ("AMD") employee who provided top-line revenue and margin information to multiple clients for at least two quarters (including to Motey in a consensually recorded call before PGR's conference lines were intercepted), as well as sales figures for substantially all of AMD's product lines on a monthly basis. *See United States* v. *Longoria*, 11 Cr. 32 (JSR). Longoria pled guilty pursuant to a cooperation agreement and awaits sentencing.

- **Alnoor Ebrahim** – the second most highly used PGR consultant and a former employee of AT&T, with whom Motey made consensual recordings and who was also intercepted over the PGR Wiretaps. Ebrahim provided PGR clients with unit sales numbers for various handset devices sold by AT&T. Ebrahim pled guilty before the Honorable J. Paul Oetken on June 18, 2012, to conspiracy to commit wire fraud and securities fraud, in *United States* v. *Ebrahim*, 12 Cr. 471 (JPO), and was sentenced on October 25, 2012 to 12 months' imprisonment.

- **Daniel DeVore** – the third most highly used PGR consultant and a former employee of Dell, Inc. ("Dell"), with whom Motey made consensual recordings and who was also intercepted over the PGR Wiretaps. Devore provided PGR clients with unit shipment numbers for Dell's desktop and notebook computers (which accounts for 60 percent of Dell's business), as well as market share and pricing information for Dell's hard drive suppliers, Western Digital and Seagate. DeVore pled guilty before Your Honor on December 10, 2010, to conspiracy to commit wire fraud and securities fraud, and wire fraud, pursuant to a cooperation agreement, and awaits sentencing. *See United States* v. *Devore*, 10 Cr. 1248 (JSR).

- **Walter Shimoon** - a former employee of Flextronics who was intercepted over the PGR wiretaps, and who provided Inside Information to PGR clients and to an independent research consultant named John Kinnucan.[2] The Inside Information

---

2
██████████████████████████████████████████████

The Honorable Jed S. Rakoff
January 28, 2013
Page 6

Shimoon provided included Flextronics' revenues on one occasion, confidential
production numbers for his employer's customer, Apple, Inc., and revenue
information for a supplier (Omnivision).  Shimoon pled guilty on July 5, 2011,
before Your Honor, to two counts of conspiracy to commit wire fraud and
securities fraud and one counts of substantive securities fraud, pursuant to a
cooperation agreement.  *See United States* v. *Walter Shimoon*, 11 Cr. 32 (JSR).
Shimoon's cooperation against Kinnucan, who provided inside information to
various money managers, substantially contributed to the conviction (by guilty
plea) of John Kinnucan on insider trading charges.  *See United States* v.
*Kinnucan*, 12 Cr. 163 (DHB).  Kinnucan, who also pled guilty to obstruction of
justice charges, was sentenced by the Honorable Deborah H. Batts to 51 months'
imprisonment on January 15, 2013.

- **Manosha Karunatilaka** – a former employee of Taiwan Semiconductor
  Manufacturing Company ("TSMC"), with whom Motey made consensual
  recordings and who was also intercepted over the PGR Wiretaps.  Karunatilaka
  provided Inside Information to PGR clients that included shipment orders for
  approximately 70 percent of TSMC's business.  Karunatilaka pled guilty to
  conspiracy to commit securities fraud and was sentenced on September 15, 2011
  to 18 months' imprisonment.  *See United States* v. *Karunatilaka*, 11 Cr. 32 (JSR).

    *c.   PGR Wiretaps and Resulting Investigations and Prosecutions*

As noted above, Motey's consensually recorded calls with PGR consultants and others
formed a critical part of the Government's application to intercept communications over PGR's
conference lines, which the Government then renewed for six 30-day periods.[3]  As a result of
these wiretaps, the Government was able to approach and secure the cooperation of various
hedge fund and investment firm analysts and portfolio managers who were clients of PGR.  In
particular, the PGR wiretaps have resulted in the following series of prosecutions:

- **Jason Pflaum** – Pflaum, who was intercepted over the PGR Wiretaps, pled guilty
  pursuant to a cooperation agreement on December 17, 2010, to conspiracy to
  commit securities fraud and securities fraud, in *United States* v. *Pflaum,* 10 Cr.
  1265 (JSR), and awaits sentencing.  Pflaum's cooperation in turn led directly and
  indirectly to multiple convictions, including those of: (1) Samir Barai; (2)
  Winifred Jiau; (3) Noah Freeman; (4) Donald Longueuil; (5) Stanley Ng; (6) Son
  Ngoc Nguyen; and (7) Tai Nguyen.

- **Sam Adondakis** – Adondakis, who was intercepted over the PGR wiretaps, pled
  guilty pursuant to a cooperation agreement on April 25, 2011, to conspiracy to

---

[3] ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

The Honorable Jed S. Rakoff
January 28, 2013
Page 7

commit securities fraud and securities fraud, in *United States* v. *Adondakis*, 11 Cr. 360 (JFK).  Adondakis's cooperation, in turn, led to the convictions of a number of analysts and portfolio managers at a network of hedge funds, including Diamondback Capital, Level Global Investors, and SAC Capital, both by guilty pleas and, for two defendants, after a six-week trial.  *See United States* v. *Tortora*, 11 Cr. 430 (WHP); *United States* v. *Todd Newman, Anthony Chiasson, Jon Horvath, Danny Kuo, Hyung Lim*, 12 Cr. 121 (RJS); and *United States* v. *Sandeep Goyal*, 11 Cr. 935 (KBF).

**B. Motey's Historical Information and the Successful Prosecution of Doug Whitman**

As noted above, immediately upon being approached by the FBI, Motey began providing the Government with information about potential insider trading activities of his former co-conspirators, including Doug Whitman.  The Government had not been aware of all of these individuals or their involvement in insider trading offenses prior to Motey speaking about them.  To further strengthen these prosecutions, as in the case of Doug Whitman (among others), Motey also engaged in consensually recorded calls at the direction of the FBI.  Motey's historical and proactive cooperation led directly to one of the charges brought against Doug Whitman, and for which Whitman was convicted at trial.  *See United States* v. *Doug Whitman*, 12 Cr. 125 (JSR).

Motey served as an important Government witness at Doug Whitman's trial in August 2012.  He was the principal cooperating witness who testified about the conduct in Count One of the Indictment against Whitman, which involved Motey's provision of Inside Information on Marvell to Whitman.  Motey's testimony was instrumental in establishing the sources of the Inside Information (Brennan and Miri), Whitman's intent to obtain such information and use it for making trading decisions in Marvell, and Whitman's trading strategy as to Marvell.[4]  Motey's testimony was corroborated by other evidence, including a notebook Motey kept of his research and certain Inside Information he obtained from Brennan and Miri, instant messages and emails, telephone records, consensual recordings, testimony and documents provided by Marvell, and the testimony of Wesley Wang, another cooperating witness who testified that he received MNPI from Whitman on Marvell, which Wang understood Whitman received from Motey.

Additionally, Motey's consensual recordings with Whitman provided powerful evidence as to Whitman's criminal intent on all counts with which Whitman was charged.  For example, in one recorded conversation between Whitman and Motey where they discuss another individual who received information on Marvell, Whitman said: "I don't know where he gets his information from.  I don't think he has the kind of moles you have.  Even . . . I don't think he has the moles even that I have."

---

[4] At trial, the defense argued that Whitman's trades in Marvell that were alleged to be based on Inside Information were not consistent with Whitman's role as a long-term shareholder in Marvell, as evidenced by his steady long position, and thus, that Whitman was not trading based on Inside Information.  Motey's testimony helped explain to the jury why certain of Whitman's trades in Marvell were not inconsistent with his long-term interest in the company.

The Honorable Jed S. Rakoff
January 28, 2013
Page 8

In sum, Motey's cooperation substantially contributed to Whitman's conviction following a three-week jury trial.  On January 24, 2013, this Court sentenced Whitman to two years' imprisonment.

### C. Ongoing Investigations

███████████████████████████████████████████████████

Because the Government continues to rely on Motey's cooperation, it will request that Motey's continued cooperation be a condition of any term of probation or supervised release imposed upon Motey.

## III.   Conclusion

As described above, Motey's assistance has been critical to the investigation and prosecution of dozens of individuals involved in insider trading, most significantly in the area of the Government's investigation of the expert networking firm PGR.  Motey's proactive cooperation with the Government, which included over 400 calls with company insiders, PGR employees, and others, led to one of the Government's most successful efforts of infiltrating a corrupt business that held itself out as a legitimate research firm for money managers.  Motey's consensually recorded calls and the subsequent wiretaps of PGR's conferences lines – which were made possible by Motey's cooperation – pulled back the covers on conduct inside a leading expert network firm.  As a result of Motey's efforts, the Government successfully prosecuted over 20 individuals, including public company insiders, PGR employees, and hedge fund analyst and portfolio managers, who secretly trafficked in the illegal inside information under the cover of a seemingly legitimate business.

In addition to Motey's proactive cooperation, Motey also made a significant contribution to Government prosecutions through his historical information and testimony.  Notably, Motey testified in *two* trials at the request of the Government, testifying for a combined eight days.  In both cases, Motey traveled to New York repeatedly to meet with prosecutors for dozens of hours to prepare for his testimony and to review consensually recorded calls and documents that were critical to the convictions of both defendants, and in both cases he was subjected to rigorous and lengthy cross-examination.

Like all defendants, Motey has incurred significant financial and reputational harm as a result of his cooperation.  ██████████████████████████████████████████████████████████████  Motey has continued to remain committed to his cooperation, without complaint or hesitation, and has always been willing to undertake any assistance requested by this Office or the FBI.

The Honorable Jed S. Rakoff
January 28, 2013
Page 9

In light of these facts, and assuming that the defendant continues to comply with the terms of his cooperation agreement, commits no additional crimes before sentencing, and appears for his sentencing as scheduled, the Government intends to request at sentencing, pursuant to Section 5K1.1 of the Sentencing Guidelines, that the Court sentence the defendant in light of the factors set forth in Section 5K1.1 of the Guidelines.

Respectfully submitted,

PREET BHARARA
United States Attorney


By:      /s/ Jillian B. Berman_____
Jillian B. Berman
Christopher L. LaVigne
Antonia M. Apps
Assistant United States Attorneys
Tel.:  (212) 637-2197/2235/2198


cc: United States Probation Officer Ross Kapitansky (via email)
    Lee Altschuler, Esq; Alexandra Shapiro, Esq; counsel for Motey (via email)